# ATTACHMENT  2

| Case Number | Matter | Docket Date | Close Date | # of Days |
|---|---|---|---|---|
| A-12726 | River Terminal Railroad – UTU | 04/24/1995 | 02/15/2000 | 1,758 |
| A-12792 | Amtrak – UTU | 12/15/1995 | 01/18/2000 | 1,495 |
| A-12804 | Amtrak – UTU | 12/15/1995 | 10/26/1999 | 1,411 |
| A-12805 | Amtrak – UTU | 12/15/1995 | 03/13/2000 | 1,550 |
| A-12839 | Amtrak – BLE/ATDD | 08/14/1996 | 04/11/2000 | 1,336 |
| A-12853 | Union Railroad – USWA | 11/05/1996 | 10/23/2000 | 1,448 |
| A-12922 | Union Railroad – USWA | 10/06/1997 | 01/29/2001 | 1,211 |
| A-12969 | Soo Line Railroad – BLE | 01/08/1991 | 01/08/1999 | 2,992 |
| A-13158 | NCCC – SMWIA | 02/16/2001 | 04/04/2005 | 1,508 |
| A-13160 | NCCC – IBEW | 02/16/2001 | 08/02/2004 | 1,263 |

**Total: 10**

# ATTACHMENT  3

Mac A. Fleming
*President*



William E. LaRue
*Secretary-Treasurer*

# Brotherhood of Maintenance of Way Employes
### Affiliated with the A.F.L.-C.I.O. and C.L.C.

April 7, 2000

Steve Crable, Chief of Staff
National Mediation Board
Suite 250 East
Washington, DC 20572

Re:     BMWE/Amtrak Mediation Request

Dear Mr. Crable:

Enclosed herein please find a Request by the BMWE for mediation of the above referenced dispute.  We have included a Request for Mediation on the appropriate NMB form and a copy of the 30 day notice and Section 6.  Thank you for your assistance in this matter.

Yours truly,

*Mac A. Fleming*
President

cc:    R. Lau
       H. Wise
       R. Wehrli
       J. Dodd
       P. Geller
       H. Granier
       R. Ash
       W. Glissen
       J. Myron

NATIONAL MEDIATION BOARD    2000 APR -7  P 3: 50

President's Dept.
FAX 248-948-7150

Suite 200
26555 Evergreen Road
Southfield, MI 48076-4225
Telephone 248-948-1010

Secretary-Treasurer's Dept.
FAX 248-948-9140

APR-07-00  14:37                                           P.02      R-588    Job-409

'APR. 7. 2000  1:24PM   From:NATIONAL MEDIATION BOARD FRONT DESK    202692508●    NO. 6392   P. 2/16
                                                                                T-802  P.01   Job-374
2000 APR -7  P 3: 50

Form NMB-2    NATIONAL MEDIATION                              OMB No. 3140-0001
              BOARD                                           (Expiration Date 08/30/02)

# NATIONAL MEDIATION BOARD

## APPLICATION FOR MEDIATION SERVICES

### TO THE NATIONAL MEDIATION BOARD, Washington, D.C. 20572

A dispute has arisen between the parties shown below which has not been adjusted between them, and the services of the National Mediation Board under Section 5, First, of the Railway Labor Act, are hereby invoked on specific questions set forth below. The approximate number of employees involved is _2500_ in the craft(s) or class(es) of _Maintenance of way structures and electric Catenary system_

### THE SPECIFIC ISSUE(S) IN DISPUTE

_All issues as the carrier is protracting bargaining by failing to provide enough dates to promptly resolve_ Section 6 notices _or bargain expeditiously._ (if necessary extend question on additional sheet or attach exhibit)

### PARTIES TO DISPUTE

_AMTRAK_                                    _BMWE_
(Name of Carrier)                           (Name of Organization or Individual)

_Joe Bress Vice President-Labor Relations_  _Jed Dodd, Perry Geller, Stuart Hurlburt, Randolph Haywood_
(Labor Relations Officer)                   (Organization Official) _Cranfer, William Glasser_

_60 Massachusetts Avenue_                   _1930 Chestnut Street_
(Address)                                   (Address)

_Washington DC 20002_                       _Philadelphia PA 19103_
(City, State and Zip)                       (City, State and Zip)
                                            _215-569-1285 (office)_
                                            _215-569-0686 (Fax)_
(Telephone and Fax Number)                  (Telephone and Fax Number)

### WORKING AGREEMENT

If an agreement governing rates of pay, rules, or working conditions is in effect, give name of parties thereto and date thereof. If there is no such agreement, so state _AMTRAK/BMWE, moratorium expired 12/31/99_

### COMPLIANCE WITH RAILWAY LABOR ACT

1.  If this dispute involves change in the above-mentioned agreement, attach copy of the 30-day notice served by party desiring change and insert date of notice here _November 1, 1999_ .

2.  If this dispute involves the negotiation of a new or supplemental agreement, attach copy of request made by party desiring same and insert date of request here _____ .

3.  If there has been refusal to confer, so state and give reason; otherwise, give date of last conference here _Last Conference 3/28/00_

Signed at _Washington, DC_                     this _4th_ day of _April_  <del>10</del> _2000_

Name _____            Name _Jed Dodd    Mac Fleming_
     (Signature of Carrier Official)            (Signature of Organization Official)

Title _____           Title _President_        _4/4/00_

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control Number. The valid OMB control number for this information collection is 3140-0001. The time required to complete this information collection is estimated to average 15 minutes per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection.

(File this application in duplicate)
(If necessary, use and attach additional sheets)

"An Injury To One Is An Injury To All"

# Pennsylvania Federation

1930 Chestnut Street - Suite 607
Philadelphia, Pennsylvania  19103
phone: (215) 569-1285
fax: (215) 569-0676

Office of the General Chairman
Jed Dodd

certified letter number Z 171 629 765
return receipt requested

November 1, 1999

National Railroad Passenger Corporation
Joe Bress, Vice President Labor Relations
60 Massachusetts Avenue
Washington, DC  20002

Dear Mr. Bress:

Please consider this letter and attached documents as the usual and customary thirty-day (30) notice of our desire, pursuant to the *Railway Labor Act*, as amended, to revise and supplement all existing Agreements in accordance with the proposals set forth within the enclosed documents and made a part hereof, such provisions to be effective January 1, 2000.

We intend, and are prepared to, negotiate these issues in local handling jointly with all other BMWE System Divisions/Federation on this property.

It is our desire that conference on this Notice be held at the earliest practicable date within the next thirty (30) days and in any event on or before November 30, 1999 and that you, within ten (10) days after receipt of this Notice suggest a date, time and place for such conference.

As you are aware, no agreement you reach resulting from this Section 6 process shall be final until President Fleming has give express written approval to you and we have complied with the approval process under our By-Laws.

This request is separate from and in addition to any other requests we have submitted to you which are now pending.

Yours truly,

Jed Dodd
General Chairman

cc    President Fleming
      Amtrak General Chairmen
      Pennsylvania Federation Joint Protective Board
      All Amtrak Committees

# ATTACHMENT

Any request for changes herein is not an admission, expressed and/or implied, directly and/or indirectly, that those changes requested are not already contained within the terms and conditions in any existing collective bargaining agreement between Brotherhood of Maintenance of Way Employes and the carrier.

Revise, amend and supplement existing collective bargaining agreements to:

1.  effective January 1, 2000 provide for a general wage increase in basic rates-of-pay and for periodic general wage increases thereafter.

2.  effective July 1, 2000 provide for a full cost-of-living adjustment and for periodic full cost-of-living adjustments thereafter.

3.  effective January 1, 2000 provide an across the board equity wage adjustment.

4.  effective January 1, 2000 provide skill adjustment on various agreed to classifications.

5.  effective January 1, 2000 provide across the board rate increases to provide parity for rates of pay provided on New Jersey Transit, Long Island Railroad, Metro North and SEPTA.

6.  effective January 1, 2000 raise rates for each classification to the highest rate paid for that classification on any railroad. Items 1-5 shall be applied effective January 1, 2000 after this item 6 is provided.

7.  provide arrangements for the establishment of an early retirement benefit.

8.  provide Health Care Coverage for employees eligible to retire under any pension or retirement system established by statute or agreement.

9.  provide for the elimination of contracting maintenance of way work to outside concerns without agreement of the General Chairman.

10. provide arrangements for the stabilization of employment including successorship of existing contracts in any sale, lease or other transaction involving a carrier's rail line.

11. Improve benefits to duplicate vision and dental and supplemental sickness benefits obtained by National Railroad Plans in 1996 and provide for the improvement in all health care benefits as set forth in Attachment A.

-2-

12.     provide arrangements to protect employees from losses involving accidents with uninsured or underinsured motorists

13.     provide arrangements to continue all health insurance benefits to all furloughed employees.

14.     provide for additional vacation, holiday, personal leave and bereavement leave benefits and reduce and liberalize qualifications for them and establish sick leave benefits.

15.     provide arrangements to establish a shorter standard work week with no reduction in pay.

16.     provide for the elimination of camp cars, outfit cars, trailers and other mobile lodging facilities provided by the Carrier and provide that all employees shall receive single occupancy lodging and full reimbursement of expenses for meals and telephone while away from home.

17.     provide mileage reimbursement and pay at the applicable straight time or overtime rates for all time expended traveling between home and away from home lodging locations and from one work point to another.

18.     provide premium pay for all hours worked outside of normal day shifts Monday through Friday (Monday through Thursday when working 4 day work week).

19.     provide for the elimination of all entry rates-of-pay.

20.     provide for the improvement in supplemental sickness and off-track vehicle benefits.

21.     provide for the establishment of a carrier contributory 401(k) Plan.

22.     provide that employees will not be held in positions when they are entitled by virtue of their seniority to move to different positions.

23.     provide for the exercise of seniority to any position in a classification in which the employee possesses seniority rights with no loss of seniority in other classifications.

24.     provide for a 32 hour, 4 day work week, Monday through Thursday, without a reduction of pay.

25.     increase the pay of all employees required to have a Commercial Driver's License (CDL)or other state or federal requirement for operation of highway/rail equipment and require the carrier to provide necessary training and pay for all costs associated with obtaining and

–3–

maintaining a CDL or other state or federal requirement for operation of highway/rail equipment.

26. bar the carrier from stopping any employee from obtaining any position requiring a CDL if the carrier has failed to: (a) perform necessary administrative functions in a proper and timely manner; and/or (2) train any employee in a proper and timely manner; and/or (3) pay for all costs associated with obtaining and maintaining a CDL in a timely and proper manner.

27. require the carrier to allow employees to obtain positions solely on the basis of seniority, including requiring the carrier to train employees based strictly on seniority.

28. eliminate: (1) alternate work weeks; and (2) starting times outside of 6:00 a.m. to 8:00 a.m. unless agreed to by the General Chairman.

29. require the carrier to bulletin and maintain a fixed paid meal period between the ending of the 4th hour and the beginning of the 6th hour computed from the assigned starting time and provide a wholesome meal served under sanitary conditions and 30 minute paid meal period every 5 hours after the bulletined meal period.

30. require the carrier to provide a wholesome meal served under sanitary conditions and 30 minute paid meal period within 5 hours after the commencement of work and at 5 hour intervals thereafter when employees are called to perform work outside of their regularly assigned hours.

31. provide a discipline rule which provides for appropriate due process.

32. provide for jointly established and administered program for training of employees, including, but not limited to, current positions and those positions requiring the introduction of new technology.

33. provide a standardized advertisement and award rule

34. provide for a rule for setting rates of pay for new positions or when additional duties or qualifications are placed on existing positions or classifications or when technological changes are made to existing positions or classifications.

35. provide for a jointly established and administered centralized employee manpower management office to handle maintenance and distribution of job bulletins, rosters, assignments and for all other exercises of seniority.

−4−

36.   provide a rule requiring the carrier to provide periodic information to the union regarding location and complement of gangs or other permanent and temporary assignments.

37.   provide for a company paid, union administered program for education of carrier employees.

38.   provide a monthly tool and clothing allowance.

39.   provide for a rule requiring the carrier to provide information to the union necessary to administer and negotiate the agreement.

40.   provide a rule requiring the carrier to pay employee on active military duty the difference between pay received on active military service and pay employee would have received if retained in active railroad service, such payments would also be considered as qualifications for vacation and other longevity based benefits.

41.   Upgrade the Corporate Agreement to reflect the modernization and improvements in the Northeast Corridor Agreement.

## HEALTH & WELFARE DEMANDS

# AMPLAN IMPROVEMENTS

### Eligibility –

(1)   Provide extended benefit coverage to eligible dependents for one full calendar year following the death of a covered employee.

(2)   Provide extended coverage to furloughed employees for twelve (12) months following the month in which such employees last render compensated service or receive vacation pay; provided the employer has transmitted at least three (3) monthly payments to the Plan on behalf of such employees prior to furlough.

(3)   Provide full Plan coverage to an employee and eligible dependents who is suspended or dismissed from service until final disposition under the *Railway Labor Act*.

### Life/AD&D Insurance –

(1)   Increase Active Employee Life Insurance to $50,000.00.

(2)   Increase Retired Employee Life Insurance to $10,000.00.

(3)   AD&D – increase coverage to the following:

## TABLE OF COVERED LOSSES AND BENEFIT AMOUNTS

| COVERED LOSSES | BENEFIT AMOUNTS |
|---|---|
| Life | $30,000 |
| A hand | $8,000 |
| A foot | $8,000 |
| Sight of an eye | $8,000 |
| Loss of more than one of the above in any one accident | $16,000 |
| Paralyzation | $25,000 |

Loss of sight of an eye means that the eye is entirely blind and that no sight can be restored in that eye.

Loss of a hand means that all of the hand is cut-off at/or above the wrist.

Loss of a foot means that all of the foot is cut-off at/or above the ankle.

Paralyzation means the loss of use of the extremities of the body as a result of an accident such as but not limited to paraplegic or quadriplegic, and hemiplegia occurring from a traumatic brain injury.

Not more than $30,000 will be paid for all

2

covered losses caused by all injuries which you sustain in one accident.

**Coordination of Benefits –**

(1)  For benefits in connection with on-duty injuries, eliminate any application of such amounts toward the lifetime maximum benefit.

(2)  Increase COB benefit to allow reimbursement up to a maximum of 100% of allowable charges.

**Lifetime Maximum –**

(1)  Increase lifetime maximum to unlimited.

**Reasonable and Customary Determinations –**

(1)  Increase the threshold for R&C determinations to the 95th percentile of data selected by the Plan.

**Hearing Benefits –**

(1)  Establish Hearing Benefits under the Plan.

**Birth Control/Reversal –**

(1)  Provide coverage under the plan for voluntary sterilization and/or reversal as well as prescription benefits for contraceptive medications.

**Employee Contributions –**

(1)  Eliminate any and all reference to required employee contributions as referred to in current National Agreement.

3



**Mobile Facilities –**

(1) Amend the current Plan definition of a facility to include a mobile facility used by licensed physicians or other qualified medical personnel to deliver services to employees and their dependents.

**Managed Medical Care Program (MMCP) –**

(1) Reduce all co-payments under MMCP to $5.00 per visit including emergency room.

(2) Reduce all out-of-network penalties to 10%.

(3) Eliminate the gatekeeper requirement.

**Comprehensive Health Care Benefit (CHCB) –**

(1) Provide uniform application of immunization and well person physical benefits provided under MMCP to CHCB.

(2) Provide 90/10 co-payments under the CHCB plan.

(3) Eliminate the annual deductible.

(4) Provide benefits comparable to MMCP for employes who do not live in MMCP networks.

**Managed Mental Health and Substance Abuse Benefit (MHSA) –**

(1) Reduce all co-payments under MHSA to $5.00 per visit including emergency room.

(2) Reduce all out-of-network penalties to 10%.

4

**AMPLAN Early Retirement Major Medical Benefit Plan**

Eligibility –

(1) Provide coverage for anyone collecting an annuity pursuant to the Railroad Retirement Act.

(2) Provide automatic enrollment into GA-46000.

(3) Provide extended benefits for five (5) calendar years to a dependent spouse who is under the age of 65 when the retired employee qualifies for Medicare.

(4) Eliminate the COBRA exclusion from age annuitant eligibility.

Managed Care –

(1) Establish managed care benefits under amended retirement plant that are identical in all respects to the MMCP under Amplan.

Comprehensive Care –

(1) Establish comprehensive care benefits under retirement plan that are identical in all respects to the CHCB under Amplan

**Railroad Employees National Dental Plan (GP12000-A)**

Eligibility –

(1) Provide full Plan benefits to new employees and eligible dependents on the first day of the month following the month in which such employees render compensated service.

5

(2)  Provide full Plan coverage to an employee and eligible dependents who is suspended or dismissed from service until final disposition under the *Railway Labor Act*.

(3)  Establish benefit coverage for employees who are collecting an annuity pursuant to the Railroad Retirement Act.

Benefits -

(1)  Eliminate the annual deductible.

(2)  Increase the annual maximum to $3,000.00.

(3)  Increase Type B coverage to 100%.

(4)  Increase Type C coverage to 75%.

(5)  Increase orthodontia benefit to 90% with a maximum of $2,500.00.

(6)  Provide orthodontia coverage to all employees and covered dependents regardless of age.

(7)  Eliminate the alternate treatment provisions of the Plan.

## RAILROAD EMPLOYEES NATIONAL VISION PLAN

Network -

(1)  Expand network coverage to the Vision Service Plan (VSP) Standard Network.

In-Network Benefits -

(1)  Increase the frame allowance to $112.50.

(2)  Include fitting costs for contact lenses in the covered examination costs.

6

(3)    Provide  full  coverage  for  the  following
options:

Scratch Coating

UV Protection

Anti-Reflective Coating

Photochromic Lenses

Progressive Lenses

(4)    Laser surgery benefit.  Provide full coverage for laser
surgery to correct vision in one or both eyes.

**GENERAL**

(1)    The Joint Plan Committee (JPC) will continue
to function in the same manner as previously
agreed to by the parties. When required, the
JPC shall be joint policyholders and will
jointly participate in the selection of the
insurance company or companies or other
administrators required to administer such
Plans, jointly determine the plan benefits
needed to meet the changing needs of the
employees and otherwise jointly administer all
of the Plans' activities.  The Joint Plan
Committee shall oversee and administer Amplan,
retirement plan, the Railroad Employees
National Dental Plan, the Railroad Employees
National Vision Care Plan, the various plans

7

established to provide supplemental sickness
benefits to covered employees and any and all
plans which may hereafter be developed or
introduced to provide health and welfare
benefits to active and retired employees and
their eligible dependents.

(2)   Any funds accumulated from payments that are
not needed to provide current benefits or to
cover Plan costs, and any interest thereon,
shall be used only to provide additional or
improved employee benefits.

## Hospital Associations

(1)   Hospital Association benefits will continue to be set by the
individual Hospital Association.

(2)   Effective January 1, 2001, the so-called "Dues Offsett"
formula for Hospital Association members, as provided in
Article V, Financing the Policy Contract, of the 1973
Collective Bargaining Agreement, will be amended to provide
a monthly payment equal to the projected monthly cost for the
calendar year of providing employee medical care for the
Railroad Employees National Health and Welfare Plan (the
National Plan). Any benefits provided to Hospital
Association employees by the National Plan, such as life
insurance or dependent coverage, shall not be included in the
calculation of the "Dues Offset." The projected monthly cost
shall be based on the average contract rates for employee

8

medical care, without adjustment to reflect payments actually
made by the Railroads.

(3)   Thereafter, adjustments, if any, shall be made annually on
      January 1st of each subsequent year.

(4)   The so-called "pick-up fees" for any employees (or
      dependents, if applicable) transferring from Hospital
      Association Railroads to Non-Hospital Association Railroads
      will be borne by the Railroads.

(5)   Disabled or Retired Hospital Association members whose
      coverage is disrupted for any reason will be allowed to
      enroll in the Railroad Employees National Early Retirement
      Major Medical Benefit Plan (GA-46000) without penalty,
      provided they would have met the eligibility requirements at
      the time they retired.

# ATTACHMENT 4

## § 151. Definitions; short title

When used in this chapter and for the purposes of this chapter-

First. The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board, any express company that would have been subject to subtitle IV of title 49, United States Code, as of December 31, 1995, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, and any receiver, trustee, Or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier": *Provided, however,* That the term "carrier" shall not include any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation, but shall not exclude any part of the general steamrailroad system of transportation now or hereafter operated by any other motive power. The Surface Transportation Board is authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso. The term "carrier" shall not include any company by reason of its being engaged in the mining of coal, the supplying of coal to a carrier where delivery is not beyond the mine tipple, and the operation of equipment or facilities therefor, or in any of such activities.

## § 155. Functions of Mediation Board

### First. Disputes within jurisdiction of Mediation Board

The parties, or either party, to a dispute between an employee or group of employees and a carrier may invoke the services of the Mediation Board in any of the following cases:

(a) A dispute concerning changes in rates of pay, rules, or working conditions not adjusted by the parties in conference.

(b) Any other dispute not referable to the National Railroad Adjustment Board and not adjusted in conference between the parties or where conferences are refused.

The Mediation Board may proffer its services in case any labor emergency is found by it to exist at any time.

In either event the said Board shall promptly j)ut itself in communication with the parties to such controversy, and shall use its best efforts, by mediation, to bring them to agreement. If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action (except as provided in paragraph third of this section and in section 160 of this title) to induce the parties to submit their controversy to arbitration, in accordance with the provisions of this chapter.

If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 160 of this title, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

# ATTACHMENT 5



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692–5000

April 10, 2000

**<u>Sent via Facsimile and U.S. Mail</u>**

Mr. Mac A. Fleming
President
Brotherhood of Maintenance of Way Employes
26555 Evergreen Road, Suite 200
Southfield, MI 48076

Mr. Joseph M. Bress
Assistant Vice President, Labor Relations
National Railroad Passenger Corp. (AMTRAK)
60 Massachusetts Avenue
Washington, DC 20002

     <u>RE:</u>   **NMB Case Number A-13080**

Gentlemen:

     The Board is in receipt of an application for mediation from the Brotherhood of Maintenance of Way Employes covering a dispute between that Organization and the National Railroad Passenger Corp. (AMTRAK), described as follows:

> "All issues, as the carrier is protracting bargaining by failing to provide enough dates to promptly resolve Section 6 notices or bargain expeditiously."

> Craft(s) or Class(es): Maintenance of Way, Structures & Electric Catenary System Employees

     Mr. Bress is requested to furnish this office promptly with any statement he may care to make on behalf of the Carrier.

     This application has been docketed as our **Case No. A-13080** and will hereafter be referred to by that number. A Mediator will be assigned to this case and you will be contacted to schedule meetings.

Page 2
NMB Case A-13080
April 10, 2000

As part of our customer service improvement program we have developed a new form to facilitate communications. Please complete the enclosed "Notice of Contact" form and return to the NMB (preferably by facsimile) within three (3) business days. The individual named should be the person primarily responsible for handling the negotiations in the above-referenced case.

The parties are reminded of the status quo provisions of the Railway Labor Act.

Sincerely,

Stephen E. Crable
Chief of Staff

SEC/ew

Enclosure (1)


cc:    Jed Dodd
       Perry Geller
       Stuart Hurlburt
       Ray Ash
       Hayward Granier
       William Glissen

## NOTICE OF CONTACT

NMB Case No. A-13038

(Please Print or Type all information Below)

_____ will be the
(Name and Title)

primary contact for the _____ in the
(Carrier/Organization Name)

above referenced case.

Address: _____

_____

_____

Work Phone No. _____

Facsimile No. _____

Home Phone No. _____

Alternate No. _____

E-mail Address _____

**(Please FAX this Notice of Contact to 202-692-5084)**

# ATTACHMENT 6



National Railroad Passenger Corporation, 60 Massachusetts Avenue, N.E., Washington, D.C. 20002 Telephone (202) 906-3000

April 13, 2000

 Amtrak

APR 21  12 18 PM '00

NATIONAL MEDIATION
BOARD

**Sent via Facsimile and U.S. Mail**

Mr. Stephen E. Crable, Chief of Staff
National Mediation Board
1301 K Street, N.W.
Washington, DC 20572

A - 13080

Dear Mr. Crable:

This will acknowledge receipt of your April 10, 2000, letter advising that the Brotherhood of Maintenance of Way Employees have filed application for mediation over the following dispute:

"All issues, as the carrier is protracting bargaining by failing to provide enough dates to promptly resolve Section 6 notices or bargain expeditiously."

I am somewhat surprised by the Organization's request in this case. The initial conference on their proposals was held on November 23, 1999. No additional meetings were requested by the BMWE until mid March, 2000, when the parties agreed to meet on March 28, 2000. At that session, the parties discussed the possibility of establishing a sub-committee to consider certain rules issues. The Organization was to advise what issues they believed appropriate for the sub-committee to review, who would represent the Organization on such a committee and the dates for further discussions. We have not yet received their response nor has there been a request for additional meetings.

Based on these facts, I believe the Organization's request for Mediation is premature at this time. We are and have been prepared to schedule mutually convenient dates with the BMWE to continue negotiations.

Very truly yours,

Joseph M. Bress
Vice President-Labor Relations

AN EQUAL OPPORTUNITY EMPLOYER



Mr. Steven E. Crable
April 13, 2000
Page 2


cc:    Mac A. Fleming
       Ray Ash
       Jed Dodd
       Perry Geller
       William Glissen
       Hayward Granier
       Stuart Hurlburt, Jr.

# AMTRAK
## BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES (BMWE)
### SECTION 6 PROPOSALS

Based upon the Amtrak Business Plan and the need to be operationally self-sufficient, Amtrak proposes the parties agree to make necessary changes in contracts, rules, and practices to improve efficiency and productivity to the maximum extent possible.

Amtrak proposes these changes to support the following key business strategies:

- Build a Market Based Network
- Develop Corridor and Commuter Services
- Deliver Consistent Quality Service
- Revitalize the Amtrak Brand
- Leverage Public and Private Partnerships

Areas for discussion in furtherance of these goals include:

## I.    COMPENSATION ELEMENTS

A.    Compensation potential based on productivity, efficiency & other operational changes.

B.    As part of any final economic package, provide that part of such package will be tied to corporate-wide measures, such as improvements in Amtrak's budget results and/or customer satisfaction goals.

C.    Wages will be paid by direct deposits into an account with a bank, credit union, financial services organization, or similar institution.

D.    Wages will be paid on a bi-weekly basis.

## II.    MEDICAL BENEFIT PLAN

A.    Provide for additional strategies to control the growth of medical benefit plan costs, including plan design changes and regular employee cost sharing.  Among the strategies are the following:

1.    benefit design changes and cost-sharing;

2.    modifying deductibles, annual out-of-pocket and lifetime maximums, copayments and coinsurance;

3.    expanding exclusions and limits;



4.    limiting eligibility and the duration of extended or continued coverage;

5.    managed care only where available;

6.    universal non-duplicative coordination of benefits;

7.    pre-approval of certain supplies and services.

## III.    RULES TO SUPPORT AMTRAK BUSINESS PLAN OBJECTIVES

A.    Provide for streamlined and flexible work rules for employees used in Commuter and Corridor Services.

B.    The parties will jointly realign work zones or territories as appropriate for efficiency in the operation.

C.    Develop new provisions governing meals, lodging and travel expenses that will fairly address the costs reasonably, actually and necessarily incurred by employees while eliminating unjustified or unreasonable payments, consistent with Amtrak's administrative needs and operational circumstances.

D.    Provide that all employees work in a team environment, capable of performing all work for which capable, without claim or penalty, in the most efficient manner possible.

E.    To enhance the quality of service and job performance, Amtrak and the BMWE will jointly develop limitations on successful bids to the same or lower rated positions.

F.    In order to enhance flexibility in meeting customer needs and service requirements, provide for establishment of and/or modifications to work schedules and rest days, starting times and hours of assignment that are consistent with operational requirements.

G.    In recognition of certain operational conditions, Amtrak and the BMWE will identify and establish procedures for work site reporting by specific gangs.

H.    Amtrak and the BMWE will jointly develop an efficient method of filling key positions or assignments for which there are no qualified applicants.

I.    Provide for the adjustment of work schedules in connection with training and ensure that the compensation associated with such training does not act as a disincentive to the training process.

J.    Provide that employees who have received training from Amtrak for a position or classification will apply for and accept the appropriate position or classification and, pursuant to jointly developed arrangements, will be subject to assignment to vacancies within such classification.

K.    Provide that overtime shall not be payable until an employee has worked forty (40) straight time hours during the work week.

L.     Update the work classifications to eliminate unnecessary and/or outdated positions and/or establish those classifications necessary for efficiency in the operation.

M.     Provide that in the event of emergency force reductions, when operations are restored after the emergency, all employees will report to pre-emergency positions at the start of the first full shift thereafter.

N.     Amend holiday rules to require an employee to work not only all the bulletined hours of their assignments the day before and after the holiday, but also all the scheduled hours of the assignment on the holiday, if required, in order to receive holiday pay.

O.     Provide for expanded probationary period to one year for new/upgraded/promoted employees.

P.     Provide for an employee evaluation process as to work performance on an annual basis.

Q.     Modify discipline rules to streamline the discipline and appeal processes, including providing for an expedited system without a formal hearing for attendance, drug and alcohol and customer service cases.

R.     Provide for the establishment of only Special Boards of Adjustment or Public Law Boards to arbitrate any and all disputes progressed by the union arising under the applicable agreements.

S.     Provide for automatic advancement of claims not answered at the initial level.

T.     Permit greater flexibility in contracting out work, as needed.

## IV.    CONTINGENCIES

Requirement of Amtrak Board of Directors approval, with appropriate funding levels and conditions for continued payment of any new compensation, with procedures for resolution in the event such conditions are not fulfilled.

## V.    MISCELLANEOUS

Contract duration and moratoriums to be mutually agreed upon.

# ATTACHMENT 7



# FAX TRANSMISSION

**DATE:**  April 20, 2000

**TO:**  **Mac A. Fleming, President, BMWE**
**Jed Dodd, BMWE**
**Perry Geller, BMWE**
**Stuart Hulburt, BMWE**
**Ray Ash, BMWE**
**Hayward Granier, BMWE**
**William Glissen, BMWE**
**Joseph M. Bress, Assistant Vice President, AMTRAK**
**Richard F. Palmer, Director, Labor Relations, AMTRAK**

**FAX NUMBER:**  (248)948-7150, (215)569-0686, (202)906-3783, (215)349-1260

**FROM:**  **Stephen E. Crable**
**Chief of Staff**

**SENT BY:**  Eric Weems
Mediation Coordinator

**PHONE NUMBER:**  202-692-5030

**SUBJECT:**  **NMB CASE NO. A-13080, AMTRAK & BMWE**

MEDIATORS **LES PARMELEE AND FRED LEIF** HAVE BEEN ASSIGNED TO THE ABOVE CASE.

MEDIATORS PARMELEE AND LEIF ARE AVAILABLE TO COMMENCE MEDIATION MEETINGS ON **MAY 11 AND 12, 2000.**

THE MEDIATOR(S) WILL CONTACT THE PARTIES TO CONFIRM OR TO RESCHEDULE THE ABOVE DATES BASED ON THE PARTIES AVAILABILITY AND TO ARRANGE A LOCATION AND TIME.

THE PARTIES MAY CONTACT THE MEDIATOR(S) AT (202) 692-5000 AND ARE ENCOURAGED TO DO SO IN ORDER TO FACILITATE PROMPT SCHEDULING OF THIS CASE.

cc:   Les Parmelee, Mediator
Fred Leif, Mediator

# ATTACHMENT 8



# Fax Transmission

**Date:** April 26, 2000

**TO:** **Mac A. Fleming, President, BMWE**
**Jed Dodd, BMWE**
**Perry Geller, BMWE**
**Stuart Hulburt, BMWE**
**Ray Ash, BMWE**
**Hayward Granier, BMWE**
**William Glissen, BMWE**
**Joseph M. Bress, Assistant Vice President, AMTRAK**
**Richard F. Palmer, Director, Labor Relations, AMTRAK**

**Fax Number:** (248)948-7150, (215)569-0676, (270) 247-0453, (202)906-3783, (215)349-1260

**FROM:** **Stephen E. Crable**
**Chief of Staff**

**Sent By:** Eric Weems
Mediation Coordinator

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No. A-13080, AMTRAK & BMWE**


MEDIATORS LES PARMELEE AND FRED LEIF WILL BE AT THE CARRIER'S OFFICES, 30TH STREET STATION, PHILADELPHIA, PA, AT 10:30 A.M.,ON FRIDAY, MAY 12, 2000 TO COMMENCE MEDIATION MEETINGS.


cc:    Les Parmelee, Mediator
      Fred Leif, Mediator

# ATTACHMENT 9



# Fax Transmission

**Date:** May 22, 2000

**TO:** **Mac A. Fleming, President, BMWE**
**Jed Dodd, BMWE**
**Perry Geller, BMWE**
**Stuart Hulburt, BMWE**
**Ray Ash, BMWE**
**Hayward Granier, BMWE**
**William Glissen, BMWE**
**Joseph M. Bress, Assistant Vice President, AMTRAK**
**Richard F. Palmer, Director, Labor Relations, AMTRAK**

**Fax Number:** (248)948-7150, (215)569-0676, (270) 247-0453, (202)906-3783, (215)349-1260

**FROM:** **Stephen E. Crable**
**Chief of Staff**

**Sent By:** Eric Weems
Mediation Coordinator

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No. A-13080, AMTRAK & BMWE**

MEDIATORS LES PARMELEE AND FRED LEIF WILL BE AT THE CARRIER'S OFFICES, 30TH STREET STATION, PHILADELPHIA, PA, AT 10:00 A.M.,ON FRIDAY, JUNE 16, 2000 AND ALSO ON TUESDAY, JUNE 27, 2000 TO CONTINUE MEDIATION MEETINGS.

IN ADDITION, MEDIATION MEETINGS WITH MEDIATORS PARMELEE AND LEIF WILL BE HELD AT THE CARRIER'S OFFICES, IN PHILADELPHIA, PA, AT 10:00 A.M., ON THURSDAY, JULY 13 THROUGH FRIDAY, JULY 14, 2000.

cc:    Les Parmelee, Mediator
Fred Leif, Mediator

# ATTACHMENT 10



# Fax Transmission

**Date:** June 19, 2000

**TO:** **Mac A. Fleming, President, BMWE**
**Jed Dodd, BMWE**
**Perry Geller, BMWE**
**Stuart Hulburt, BMWE**
**Ray Ash, BMWE**
**Hayward Granier, BMWE**
**William Glissen, BMWE**
**Joseph M. Bress, Assistant Vice President, AMTRAK**
**Richard F. Palmer, Director, Labor Relations, AMTRAK**

**Fax Number:** (248)948-7150, (215)569-0676, (270) 247-0453, (202)906-3783, (215)349-1260

**FROM:** **Stephen E. Crable**
**Chief of Staff**

**Sent By:** Eric Weems
Mediation Coordinator

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No. A-13080, AMTRAK & BMWE**

BY MUTUAL AGREEMENT, THE PARTIES HAVE CANCELLED THE MEDIATION SESSION SCHEDULED FOR JUNE 27, 2000.

MEDIATION MEETINGS WITH MEDIATORS LES PARMELEE AND FRED LEIF WILL CONTINUE AS PREVIOUSLY SCHEDULED FOR 10:00 A.M.,ON THURSDAY, JULY 13 THROUGH FRIDAY, JULY 14, 2000 AT THE CARRIER'S OFFICES, IN PHILADELPHIA, PENNSYLVANIA.

ADDITIONALLY, MEDIATION MEETINGS WILL BE HELD WITH MEDIATORS PARMELEE AND LEIF AT THE CARRIER'S OFFICES IN PHILADELPHIA, PA AT10:00 A.M.,ON THURSDAY, AUGUST 3 THROUGH FRIDAY, AUGUST 4, 2000.

cc:    Les Parmelee, Mediator
Fred Leif, Mediator

# ATTACHMENT 11



# Fax Transmission
## *CANCELLATION NOTICE*

**Date:** July 31, 2000

**TO:** **Mac A. Fleming, President, BMWE**
**Jed Dodd, BMWE**
**Perry Geller, BMWE**
**Stuart Hulburt, BMWE**
**Ray Ash, BMWE**
**Hayward Granier, BMWE**
**William Glissen, BMWE**
**Joseph M. Bress, Assistant Vice President, AMTRAK**
**Richard F. Palmer, Director, Labor Relations, AMTRAK**

**Fax Number:** (248)948-7150, (215)569-0676, (270) 247-0453, (202)906-3783, (215)349-1260

**FROM:** **Stephen E. Crable**
**Chief of Staff**

**Sent By:** Eric Weems
Mediation Coordinator

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No. A-13080, AMTRAK & BMWE**

MEDIATION MEETINGS SCHEDULED FOR THURSDAY, AUGUST 3 THROUGH FRIDAY, AUGUST 4, 2000 HAVE BEEN CANCELED AT THE REQUEST OF MEDIATOR LES PARMELEE.

FURTHER MEETINGS DATES ARE NOW SCHEDULED WITH MEDIATOR PARMELEE FOR 10:00 A.M.,ON TUESDAY, AUGUST 22 AND WEDNESDAY, AUGUST 23, 2000 AT THE CARRIER'S OFFICES IN PHILADELPHIA, PA.

cc:    Les Parmelee, Mediator
Fred Leif, Mediator